#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF SOUTH CAROLINA
#### CHARLESTON DIVISION

| | |
|---|---|
| Jessica B. Liggon, ) | C/A. No. 2:20-04375-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Continental Casualty Company, Going Costal ) | |
| Realty, and Michelle Overton, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is Plaintiff Jessica B. Liggon's motion to remand (Dkt. No. 8) and Defendant Continental Casualty Company's motion to dismiss (Dkt. No. 4). For the reasons set forth below, the Court grants Plaintiff's motion to remand and denies as moot Defendant's motion to dismiss.

**I.     Background**

This is an insurance coverage case.

In an underlying lawsuit that is still pending, Plaintiff Jessica Liggon sued, *inter alia*, Defendant Going Coastal Realty ("Going Coastal"). *See Liggon v. Sharp, et al.*, No. 2019CP2200197 (S.C. Com. Pl.) (the "Underlying Action"). In the Underlying Action, Liggon alleges that Going Costal was negligent in its real estate dealings with Liggon, specifically regarding Liggon's purchase of a house in Georgetown, South Carolina. Going Coastal is an insured under a policy issued by Defendant Continental Casualty Company ("Continental"). Defendant Michelle Overton, alleged to be Going Costal's "broker in charge and owner," was

1

not initially named as a defendant in the Underlying Action. Plaintiff asserts in her motion to remand, however, that she is "adding Ms. Overton to the Underlying Action." (Dkt. No. 8 at 2).

On November 11, 2020, Liggon filed this case (the "Coverage Action"). In the Coverage Action, Liggon alleges that Continental has a duty to defend Going Coastal in the Underlying Action. As explained by Liggon, after she filed the Underlying Action, Liggon notified Continental of her claim against Going Costal. Continental responded that although Overton was a named insured on the policy, "Overton[] ha[d] withdrawn the claim from [Continental]" and "decided to retain her own personal counsel to represent her interests in this matter." (Dkt. No. 8-1 at 1); *see also* (Dkt. No. 8 at 2-3) (citing the September 10, 2020 deposition testimony of Overton, noting Overton "refused" to accept coverage from Continental because she did "not need their help"). During her deposition in the Underlying Action, Overton testified that it was "her choice" to refuse to "accept [Continental's] inclination to defend and indemnify [her]" in the Underlying Action. (Dkt. No. 8-2 at 3). *See also* (*id.*) (admitting Going Costal does not possess "any assets" with which it would be able to satisfy a judgement entered against it). Accordingly, here, Liggon seeks a declaratory judgment that: (a) Continental has a duty to defend Going Costal with regard to the claims raised in the Underlying Action; (b) that Continental "may participate in the underlying action over the objection of Ms. Overton"; and (c) that "Continental is unable to claim prejudice or any other defense to its indemnity obligations with regard to a judgment in favor of Ms. Liggon, if Continental chooses not to participate in the underlying action." (Dkt. No. 1-1 at 8).

On December 17, 2020, Continental removed this action to federal court based on diversity jurisdiction, arguing that the parties should be realigned. As pled, diversity jurisdiction

is lacking as Liggon, Going Costal, and Overton are all alleged to be citizens of South Carolina. Continental is alleged to be a citizen of Delaware and Illinois.

On December 22, 2020, Continental moved to dismiss this action. (Dkt. No. 4).

On January 18, 2021, Liggon moved to remand this action to the Court of Common Pleas for Charleston County. (Dkt. No. 8). Continental opposes. (Dkt. No. 12).

Liggon's motion is fully briefed and ripe for disposition.

## II.     Legal Standard

Federal courts are courts of limited jurisdiction. *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). Federal removal jurisdiction exists if the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A defendant removing a case to federal court bears the burden of establishing that federal jurisdiction is proper. *Id.* (citations omitted). The existence of federal jurisdiction is determined at the time the defendant files his notice of removal. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (citations omitted). The removal statute is strictly construed against removal jurisdiction, and any doubts as to jurisdiction weigh in favor of remand. *In re Blackwater Sec. Consulting*, LLC, 460 F.3d 576, 583 (4th Cir. 2006).

## III.    Discussion

Continental argues that co-defendants Going Costal and Overton should be realigned as plaintiffs because they have interests that are aligned with Liggon's.

"Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). The court must look beyond the pleadings and arrange the parties according to their sides in the dispute. *Indianapolis*, 314 U.S. at 63. Whether the necessary collision of

3

interest exists must be ascertained from the principle purpose of the suit and the primary and controlling matter in dispute. *Marsh v. Cincinnati Ins. Co.,* No. CIV.A.4:08-CV2441RBH, 2008 WL 4614289, at *2 (D.S.C. Oct. 15, 2008). The Fourth Circuit applies the principal purpose test for determining whether realignment is appropriate. The principal purpose test has two steps. First, the court must "determine the primary issue in the controversy." *U.S. Fid. & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 133 (4th Cir. 1995). Next the court should "align the parties according to their positions with respect to the primary issue." *Id.* If the alignment differs from that in the complaint, the court must determine whether complete diversity continues to exist. *Id.*

The principal purpose test first requires the Court to determine the primary issue in controversy in this action. *See Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008) ("The determination of the 'primary and controlling matter in dispute' ... is to be determined by plaintiff's principal purpose in filing the suit."). Liggon filed the Coverage Action to assert Going Costal's rights pursuant to the policy and compel Continental to defend—and potentially indemnify—Going Costal in the underlying action. (Dkt. No. 1-1). The Court thus finds that the primary purpose of this action is to determine whether the policy requires Continental defend the Underlying Action on Going Costal's behalf over the objections of Going Costal and Overton.

Second, under the principal purpose test, the Court must align the parties according to their positions with respect to the primary issue. Here, Liggon and Continental's interest are not aligned. Continental admits as much. (Dkt. No. 1-2 at 5). Liggon's interests, however, diverge from those of Going Costal and Overton. Going Costal, through its owner Overton, has refused to permit Continental to defend it in the Underlying Action. Or said differently, while Liggon argues that Continental must defend Going Costal in the Underlying Action, neither Going

4

Costal nor Overton believe that to be the case. Therefore, the alignment of the parties remains as it was when Liggon filed the Coverage Action—with Liggon as plaintiff and Continental, Going Costal, and Overton as defendants. And, as residents of South Carolina remain both plaintiff (Liggon) and defendant (Going Costal and Overton) in this action, complete diversity is wanting. Remand is thus necessary.

Continental, however, argues that even if the Court finds that realignment is not appropriate, the Coverage action is nevertheless properly in federal court because Going Costal and Overton are nominal parties. (Dkt. No. 1-2 at 8). Continental argues that because Liggon does not seek relief against either Going Costal or Overton in the Coverage Action, both parties' citizenship should be disregarded for purposes of diversity jurisdiction.

The Fourth Circuit defines "nominal" to mean "simply a party having no immediately apparent stake in the litigation either prior or subsequent to the act of removal." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2013). In other words, the key inquiry is whether the suit can be resolved without affecting the non-diverse nominal defendants in any reasonably foreseeable way. *Id.* The "Fourth Circuit has eschewed any fixed test for determining a nominal party, opting for a practical inquiry of whether the litigation can be resolved without affecting the nominal defendant 'in any reasonably foreseeable way.'" *Ledwell v. Ravenel*, No. CV 2:19-2815-RMG, 2020 WL 806590, at *1 (D.S.C. Jan. 2, 2020), *reconsideration denied*, 2020 WL 777887 (D.S.C. Feb. 18, 2020), *affirmed*, No. 20-1344, 2021 WL 397659 (4th Cir. Feb. 4, 2021).

Here, the Court finds that Going Costal and Overton are not nominal parties. As explained above, the primary issue in this case—whether Continental must defend Going Costal over Overton's objection—clearly affects the rights and obligations of both Going Costal and

Overton. The Court therefore finds unconvincing Continental's contention that both parties are nominal solely because Liggon does not bring causes of action directly against them in the Coverage Action.

### IV.     Conclusion

For the foregoing reasons, the Court **GRANTS** Liggon's motion to remand (Dkt. No. 8) and **DENIES** as moot Continental's motion to dismiss (Dkt. No. 4).

**AND IT IS SO ORDERED.**

                                                        s/ Richard Mark Gergel
                                                        United States District Court Judge

February 10, 2021
Charleston, South Carolina